Case number 24-2123 and 25-1082, Rieth-Riley Construction Co Inc v. NLRB. Argument is not to exceed 15 minutes for the petitioner, 12 minutes for the NLRB, and 3 minutes for the intervener. Mr. Paul, you may proceed for the petitioner. May it please the court, Brian Paul for petitioner, reserving 3 minutes for rebuttal. The board's construction of the Retail Associates Rule, which governs the timing of withdrawal from multi-employer bargaining, renders the party's own agreed-upon contract modification deadline, and thus part of the rule itself, meaningless. This violates one of the cardinal rules of interpreting any law, which is to give effect to every provision if possible, and it upends over 60 years of settled industry practice in which the parties routinely included in their multi-employer bargaining agreements, as here, a 60-day contract modification deadline to get the stability and predictability-conferring benefits of the Retail Associates Rule. This is bad for both employers and unions. You're saying it's upending 60 years. Is this the first case where this has happened? This is the first case, to my knowledge, that Squarely presents this issue. Correct, but the Retail Associates Rule has been on the books since 1958. Can I ask you this? You know, we have cases that say we don't construe cases like statutes. Is it different when we're looking at NLRB orders? It is, Your Honor. As the Supreme Court noted in the Allentown Mack case, unlike perhaps any other agency, the NLRB promulgates nearly all of its rules by adjudication. And so you have to construe its rules like any other rule issued by notice and comment or otherwise. But Allentown doesn't say that. The last part that you just said, that we construe the orders like statutes and rules, right? It doesn't, but it stands to reason that this is the way the NLRB promulgates its rules, and so they have to be read according to their plain text in light of the purpose of the rule. What do we do with the cases like the Bonanno case, which essentially says, until the bargaining has begun, with this being a non-mandatory bargaining issue that either the employer or the union can withdraw from a multi-employer agreement, as long as the bargaining, the negotiating hasn't started? Right. That case did not deal with the first half of the retail associates rule, which is the rule at issue here. That case dealt with the second half of the rule, which says that after bargaining begins, you can't withdraw from multi-employer bargaining except upon mutual consent, except if there are unusual circumstances. And the employer there argued that it had reached an impasse in bargaining with the union, and argued that that was an unusual circumstance that allowed it to withdraw from multi-employer bargaining on a unilateral basis. And the board rejected that position, and so did the Supreme Court. But that case does not deal with the issue in play here, which involves a contract modification deadline and withdrawal before bargaining begins. That implicates the first half of the retail associates rule. The board can change its rules, but it must forthrightly acknowledge that it's doing so, and explain how the new rule is reasonable and consistent with the NLRA. That's not what the board did here. It purported to follow its own rule while changing it, and I think that leaves the court with two options. The first is it could remand with instructions to explain, if so, why, just as the retail associates board did in announcing a new rule. Or, alternatively, the court could hold that the plain language of the existing rule required the union to withdraw from multi-employer bargaining by the contract modification deadline, which it clearly didn't. The rule says that unions and employers alike can't withdraw from multi-employer bargaining unless they give unequivocal written notice prior to the date set by the contract modification clause, or the agreed-upon date to begin multi-employer bargaining. And the most natural reading of that rule is that if there is a contract modification deadline, but no agreed-upon date for multi-employer bargaining, as here, the contract modification deadline has to control. Otherwise, the party's own agreed-upon contract— Where are you getting that sort of construction from? I haven't found any case that supports that particular construction of retail associates. From the plain language of the rule itself. Otherwise, if you don't construe it that way, it renders the party's own contract modification deadline, and thus the first prong of the rule, meaningless. It has to be given meaning. That's a cardinal rule of construing any law. Why does it have to be given meaning if there's an or? Is the contract modification date or negotiation? And our interpretation of the rule honors the or. You either have to withdraw by the contract modification deadline, or if there isn't one, then by the agreed-upon date to begin bargaining. And if there are neither, then you can withdraw all the way up until the first day of bargaining, and then thereafter on mutual consent. But otherwise, if you don't construe it that way, the contract modification deadline will have no meaning, even though the parties chose to put that deadline in their contract. But isn't contract modification different than deciding to withdraw? In other words, you might have a 60-day deadline for saying you're going to have contract modification discussions, but have a different deadline, i.e., the date that the contract ends, or that negotiations actually begin as a separate deadline. This is true. They can be different. But the reason the contract modification deadline matters in this case is because that's what the Retail Associates Board decided to peg the timing for withdrawal to. It says you have to withdraw by the contract modification deadline, or if there is one, an agreed-upon date to begin bargaining. So that's why that matters. Now, the Board has said simply giving notice of contract modification is not the same as withdrawing from multi-employer bargaining. You have to be explicit if you're going to do the latter. And that's, again, the rule that Retail Associates established. The contract modification deadline is the deadline that matters if that deadline is in the contract, pursuant to the party's choice. And that's all consistent with the purpose of the Retail Associates rule, which is to limit the ability to withdraw from multi-employer bargaining, so as to further the fundamental purpose of the NLRA, which, as the Retail Associates Board said, But isn't the purpose to keep employers and unions from withdrawing after negotiations have begun? That's when it sort of becomes unfair, right? That's the second half of the rule. The first half of the rule says you have to withdraw by the contract modification deadline, or the agreed-upon date to begin bargaining. How is anyone prejudiced if there isn't a withdrawal by the contract modification date? Yeah, the question is not prejudice. The question, as with many deadlines in the law, is simply timeliness. And timeliness has value in and of itself in this context. I don't really see why. Because it promotes, as the Retail Associates Board said, predictability and stability in bargaining relationships. It almost could be like a catch-22 kind of thing. In what respect, Your Honor? I'm sorry. Well, if you say that they have to have withdrawn by the contract modification date, but they're not intending to modify the contract. They're intending to leave the contract. Correct. Or should they be bound by a contract modification date? Well, just as entering into a multi-employer agreement is a matter of consent, so also is a matter of consent, including in a contract, a contract modification deadline, which, by virtue of Retail Associates, limits the ability to withdraw from multi-employer bargaining. So consent and agreement runs both ways, entering into the agreement and agreeing to limit the ability to withdraw from multi-employer bargaining. Under the Retail Associates rule as written, the party's contract modification deadline matters. Everyone, unions and employers alike, got at least 60 days of contract security without fear of strikes or lockouts to get their ducks in a row for whatever may come. Now, under the Retail Associates rule as construed, both unions and employers can weaponize the prospect of withdrawing from multi-employer bargaining if they believe it's in their own advantage, which promotes instability. And there's no better evidence... Retail Associates, tell me if I'm misconstruing it, is that a rule of the board? Yes. Okay, so your position then is that, A, Retail Associates is binding until the board affirmatively changes its rule. Correct. Allentown... Why didn't they change it here? Along your lines of argument, I'm not saying that I agree with it, but wouldn't your line of argument suggest then that they did change it here? And then your argument is somehow or other we should remand? Our argument is that if it was intending to change the rule, it had to forthrightly acknowledge that fact, which it did not do. It said it was following the existing Retail Associates rule, and it has to explain why it's changing the rule, consistent with what exactly the Retail Associates board itself did when it was announcing this rule to begin with in 1958. Should we defer to the board when it says, as you say, that they're being consistent with Retail Associates? No, Your Honor. Under the Supreme Court's decision in Kaiser v. Wilkie, the board and other agencies only get deference if a rule is genuinely ambiguous after applying all the applicable rules of construction. And even then, if a genuine ambiguity remains, the construction of the rule still has to be reasonable. And neither criterion is met here. The plain language of the rule makes the contract modification date matter. And if it doesn't matter, that's inconsistent with the purpose of the rule, which is to promote stability and predictability in these multi-employer relationships. The problems that this construction creates are evident by this very case. The union withdrew late. The employers then pressed for multi-employer bargaining based on the rules as they knew them. The union then caused work stoppages at an individual employer. And then the employers locked out the entire industry for a month, and it took the governor to intervene to broker a piece. That's exactly the kind of chaos that the board's construction of the rule will breed, and exactly the kind of thing that the Retail Associates rule as written is designed to avoid. I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. Mr. Weitz? Good afternoon. May it please the Court? Eric Weitz on behalf of the National Labor Relations Board. I agree with my opponent that the primary issue in this case is this question of whether the board here reasonably construed its own policy rule from Retail Associates and reaffirmed the subtle understanding of that rule that goes back all the way to 1958, and which is that the dividing line is the start or the commencement of bargaining for a new multi-employer contract. That's what the Supreme Court explained in Charles Bonanno-Lennon. That's what this Court has construed it as in the cases we cite in our brief, at least half a dozen cases over the years. And that's what parties' subtle understanding has always been. Here, Ruth Riley raised a completely novel interpretation of language in a board adjudicatory opinion, Retail Associates, and proposed a modification or a different rule where the contract modification deadline would have dispositive weight, which no case in the history of the Act or the application of Retail Associates has ever turned on. As we explained in our brief, all of the cases that the employer cites to the Court are distinguishable, and in fact are fully consistent with the board's understanding of Retail Associates, which is that the dividing line, once again, is the start of negotiations. Given the discussion in the opening argument, I would just emphasize that the board promulgates and develops labor policy through adjudications. Retail Associates was an adjudicatory opinion. It is not a statute or even a formal rule or regulation. And at most, giving the most credit to the employer's argument would be that there is an ambiguity in the language of that opinion, which the board clarified here and reaffirmed the subtle understanding. The notion that there was some established rule vis-a-vis contract modification deadlines clearly is not the case, because the employer cannot provide a single case that actually turned on that factor, which is very improbable that that was the rule, given that contract modification deadlines are nearly universal in collective bargaining agreements and have been for at least half a century. My opposing counsel suggested that if the Court were to not accept the employer's view of Retail Associates, it would render contract modification clauses meaningless. That's simply not the case. A contract modification deadline, the purpose of that is to place a contractual limit on when parties can trigger withdrawal or modification from a contract to avoid automatic renewal for another year. The contract here, for example, which is at page 2779 of the appendix, specified that if either party did not provide the requisite notice, the master agreement would roll over for another year. Here, both parties undisputedly provided the notice that they wanted to modify the agreement and to avoid renewal. That is why that first clause is in Retail Associates, because oftentimes, especially in these multi-employer industries, you will have master agreements that are designed to renew from year to year if the multi-employer association and the union don't want to change the agreement. In Retail Associates, the board simply noted that if an individual employer wanted to get out from that contract and to negotiate a new agreement individually with the union, it needed to do so in a timely manner to avoid being bound as a matter of contract for another year or another renewal of the agreement. Here, there's no dispute that the union was, or there's no allegation that the union was contractually restricted from withdrawing from multi-employer bargaining. There is a line of board cases where the board acknowledges that if you have a contractual limit, which parties are entitled to negotiate, either between an individual employer and a multi-employer association, or between a union and an employer, that you can place contractual limits on withdrawal from multi-employer bargaining, and the board recognizes those limits and holds parties to them. No party negotiated that limit here. Instead, they negotiated a deadline for modifying the contract. Both parties complied with that deadline, and the question is only, as a matter of federal labor policy, should a party nonetheless be restricted from withdrawing from multi-employer bargaining prior to negotiations? You said that both parties complied with the deadline. Complied with what deadline? The contract modification deadline. Both MITA and the union specified in early 2018 that they wanted to avoid renewal of the master agreement. They wanted to negotiate a new agreement. The only question at that point was, would that new agreement be a new multi-employer agreement, or would it be a new individual contract? The union made clear, at least by May 2, 2018, which was still nearly a month before the master agreement expired, they unequivocally stated that they wanted to engage in individual negotiations and to withdraw from multi-employer bargaining. That's all that Retail Associates and that's all that the Act requires. Your opponent, I think, is saying that May 2 was not early enough. Right, because it admittedly occurred after the contract modification deadline, but it occurred well in advance of any bargaining. No bargaining actually occurred, which is the actual test under Retail Associates. And so even accepting, which we don't necessarily concede, but even accepting that there was some ambiguity in the way that Retail Associates was phrased that no one has ever acknowledged or applied since 1958, the board here very clearly explained why it was reaffirming a settled understanding, why it was clarifying that ambiguity, and the policy justifications in favor of this more simple bright line rule that the dividing line is the actual start of new negotiations. And under the applicable standard of review, the only question before the court is, is what the board said here rational and consistent with the Act? That is the standard of review for the board's development of national labor policy. In Charles Bonanno Lennon, for example, the Supreme Court, and this court in Detroit newspapers made very clear that the court owes deference to the board's judgment in developing national labor policy, specifically in this exact area, the question of what the standard is for withdrawing from multi-employer bargaining. And I don't read the employer as articulating a basis for concluding that what the board did here was irrational or somehow contrary to the Act. Are there cases other than Retail Associates and Charles Bonanno Lennon that you could cite us to that would be helpful to support the arguments you've just made? Yes, well, there's almost too many cases to cite, Your Honor, because in every application of Retail Associates, the way that it is phrased, the way that the board or the court has understood the rule and applied it, is whether an attempted withdrawal from multi-employer bargaining occurred before negotiations commenced or after negotiations commenced. So in our brief to the court, we cite at least half a dozen cases from this court. We cite a variety of board cases that actually respond to citations that the employer makes. And in all of those cases, the actual analysis turned on, had negotiations started for a new multi-employer agreement. And that was really the issue in both Retail Associates and Charles Bonanno Lennon. In Retail Associates, the issue was that the union and the multi-employer association had commenced negotiations for a successor contract. The negotiations were acrimonious. After seeing the union's proposals, the multi-employer association decided to withdraw from multi-employer bargaining. And that's why the board said, in the name of labor stability, we're going to prevent that unless you can meet two particular exceptions, either mutual consent of the parties or some kind of extraordinary unusual circumstance. And then several decades later in Charles Bonanno Lennon, the question before the Supreme Court was whether an impasse in multi-employer negotiations was an unusual circumstance allowing withdrawal. And the Supreme Court said no. And again, in doing this and in applying Retail Associates, every time it's phrased by the board or the court, it's phrased as though the dividing line is the start of bargaining. So what the employer has presented here is really a novel interpretation of Retail Associates. And whatever the merits of that novel interpretation, the board here reasonably and rationally rejected it and reaffirmed or clarified that the proper rule is whether negotiations have commenced. Is there any case that you can point to where this, say, 60-day deadline for contract negotiations has expired but the bargaining has not started? I can't point to a case that resolved this issue, Your Honor, which isn't to say there aren't any, because it may be that in many cases applying Retail Associates, a contract modification deadline had passed and no one saw fit to even comment on it. The reason the board has never resolved this issue is that it would have had no cause to go to the board unless one of two things had happened. Either the board's general counsel would have had to have issued an unfair labor practice complaint against the party from withdrawing in a timely manner, so wrongly issued a complaint, and then the board would have dismissed that complaint. Or a party, as Reith Riley did here, would have had to have committed an unfair labor practice in response to a lawful withdrawal. So the reason this case reached the board and is now before the court is because Reith Riley unlawfully refused to bargain and then actually locked out the employees in support of its insistence that the union had to continue multi-employer bargaining. So really the fact that this issue has not been squarely resolved by the board or a court is merely an illustration of the novelty of Reith Riley's position. If Reith Riley were correct that parties had understood all along that this is what Retail Associates meant, then this would have come up frequently over the years because, as I noted earlier, nearly every contract has a contract modification deadline, and this would have been a recurring issue that would have been resolved decades ago. Instead, this is something that has never really been presented to the board, and when it was presented to the board here, the board reasonably and rationally said, this is not what we meant in Retail Associates, and in fact, this would not further the policies of the Act. The better policy is that, given the central premise of multi-employer bargaining, that it be voluntary and consensual, the better policy is to allow parties to withdraw both unions and employers as long as they do so before new negotiations commence, and therefore don't gain some kind of unfair advantage by being able to withdraw as a leverage tactic once they see the other side's proposals in multi-employer bargaining. I think at the end of the day, this is a fairly straightforward case, and I would agree that the primary issue and some of the unfair labor practices are directly tied to this initial question of whether the union's withdrawal was lawful. I see that my time is nearly up. I'm happy to discuss any other issue that the court is interested in, but otherwise, I would just rest on the briefs and ask for enforcement in full. Thank you. Ms. Batchelder? Good afternoon. Amy Batchelder on behalf of Local 324 Operating Engineers. It's been a long journey for the road workers represented by the union, whose rights have been denied since 2018. Given the course of the arguments, I guess I should put my two cents in on retail associates. The defining element of multi-employer bargaining is mutual consent, and the board in the evening news case enforced by this court said that that mutual consent is necessary both in the creation of the relationship and the continuation of the relationship. Thus, every expiration of a collective bargaining agreement presents an opportunity for the parties to renew consent or to withdraw from multi-employer bargaining. Consent can be demonstrated by active renewed participation in multi-employer bargaining, and that is what is codified in the retail associates rule. There is no evidence of mutual consent by the union in 2018. In fact, the opposite is true. It withdrew consent consistent with and pursuant to the retail associates rule. The wreath riley urges a distorted interpretation of the rule, which has never been adopted by any court, and which is inconsistent with the universal application of the rule, which is that it can be withdrawn prior to the contract reopener or prior to the actual start of bargaining. In fact, it is evident that wreath riley in this case chose to impose multi-employer bargaining on the union by agreeing in 2018 before any reopener to a secret agreement, which required wreath riley and its fellow contractors to engage in multi-employer bargaining, and agreement not to engage in individual bargaining with the union. That first event set the stage for the events that happened in wreath riley one. And at this time, the contract modification rule was open for both parties. In fact, they preemptively attempted to deny the right for the union to withdraw. The union urges the court to enforce the board's order in its entirety. Thank you. Thank you. Rebuttal? Thank you. Why would the board include a contract modification deadline as a withdrawal deadline in its rule if the contract modification deadline didn't matter for purposes of withdrawal from multi-employer agreement? I haven't heard an answer to that question. The LRA already contains a non-waivable notice requirement if a party seeks a contract modification. The parties here, against the backdrop of the retail associates rule, agreed to limit their withdrawal rights by including in their contract a contract modification deadline. And so I agree multi-employer bargaining is a matter of consent. But so also is a matter of consent, including a limitation on one's withdrawal rights. There is no case that says a contract modification deadline doesn't matter. And the NLRB can't cite to one. None of the cases they refer to deal with a contract modification deadline. And perhaps there's no case because until now, no one thought a party could withdraw after a contract modification deadline had passed without consequence. The consequences of not giving the withdrawal deadline meaning are not particularly good for either unions or employers. It is black-letter law that when a contract expires, a no-strike and a no-lockout provision expire with it. And so now, under the rule as construed, employers and unions can stall multi-employer bargaining until right before the contract expires and then make demands on a take-it-or-we-strike-or-lockout basis. Or they can withdraw from multi-employer bargaining but say, look, if you want us back at the table on a multi-employer basis before we strike or lockout, you better meet our demands. In this way, multi-employer bargaining just becomes another bargaining chip, which is entirely antithetical to the express purpose of the Retail Associates Rule, which is to encourage stability and predictability in these sorts of arrangements. The rule as construed does precisely the opposite. Unless the Court has any further questions, we would ask the Court not to enforce the Board's order. Thank you. We appreciate the arguments that each of you has made, and the case will be submitted in a ruling in due course.